OPINION OF THE COURT
Mary McGowan Davis, J.
After a bench trial conducted before me on April 20, 1987, defendant Nereida Colon was convicted of possessing a knife with intent to use it unlawfully against another, in violation of Penal Law § 265.01 (2). The proof at trial established that *1054 Ms. Colon tried to stab an unidentified male by "lunging” at him repeatedly with a four-inch knife, which weapon was recovered from defendant at the time of her arrest.
By motion dated July 7, 1987, defendant moved to "strike” all testimony concerning her use of the knife against the unknown male and petitioned this court for an order dismissing the criminal possession of a weapon charge. Defendant claimed that she was entitled to the requested relief, because the People had filed a bill of particulars effectively limiting the proof at trial to evidence that she had pointed a knife unlawfully at a police officer; accordingly, defendant argued, she could not be convicted of violating Penal Law § 265.01 (2) on the basis of evidence showing that she had, instead, wielded the knife at another individual.
For reasons that were enunciated on the record on October 15, 1987, this court treated defendant’s application as a motion to set aside the verdict (CPL 330.30 [1]) and granted the relief sought. Because this case raises issues respecting the extent to which a bill of particulars confines the People to proof of the facts set forth therein, the rationale for the court’s ruling is elaborated below.
I
Defendant was arrested on December 27, 1986 and charged with two counts of menacing (Penal Law § 120.15) and one count of criminal possession of a weapon, fourth degree (Penal Law § 265.01 [2]). The accusatory instrument on which defendant was arraigned on January 16, 1987, in response to a desk appearance ticket issued at the time of her arrest, provided in pertinent part: "Deponent states that defendant possessed a dangerous instrument with intent to use the same unlawfully ¡against another and, by physical menace, intentionally placed and attempted to place another person in fear of imminent serious physical injury in that deponent observed the defendant holding a knife, point said knife at another person, and then point said knife at deponent after deponent, a police officer, had told defendant to drop said knife.” Both counts of menacing were dismissed by the arraigning Judge — apparently because the Assistant District Attorney had no information as to the whereabouts of the civilian complainant — leaving the criminal possession of a weapon, fourth degree (Penal Law § 265.01 [2]), count as the sole remaining charge in the information. As defendant’s attorney had appeared for ar *1055 raignment purposes only, the court directed that new counsel be appointed by the Appellate Division for the adjourned date.
Thereafter, defendant’s new counsel moved for a bill of particulars, requesting, inter alia, that the People set forth "[t]he exact manner in which Defendant indicated an intent to use said knife unlawfully as stated in the complaint”. The People’s affirmation in opposition to defendant’s omnibus motion specified in response to this demand: "The defendant pointed the knife towards the police officer”. Upon the filing of the People’s response, the matter was put over for a bench trial.
During the course of his opening statement, the Assistant District Attorney declared that the evidence at trial would show that "Police Officer Beverly Williams observed the defendant coming out of a fast food restaurant waving a knife at an unidentified person * * * and then [defendant] subsequently turned around after the police officer identified herself and waved the knife at the police officer”. Counsel promptly objected to any mention of defendant’s use of the knife against the unidentified male, citing the People’s explicit representation, in response to item number 6 of defendant’s request for a bill of particulars, that defendant’s alleged criminal conduct involved the unlawful use of the weapon against a police officer. Challenging the Assistant District Attorney’s assertion that the complaint itself put defendant on notice that she was also charged with waving the knife at an unapprehended individual, counsel emphasized that "the Bill of Particulars has a purpose, your honor, and I was mindful of what appeared in the complaint when I made that specific demand, your Honor, and counsel answered specifically and we are [defending] only on the issue of intent. There is no issue as far as possession of a knife in this particular case.” This court declined to "preclude the People’s testimony with respect to everything that the police officer saw”, concluding that because the face of the complaint plainly alleged that "defendant held a knife and pointed it at someone else and then pointed it at the police officer”, defendant was sufficiently informed of the conduct she was called upon to defend to prepare adequately for trial.
The People’s sole witness was Transit Police Officer Beverly Williams, who testified that at approximately 11:00 p.m. on December 27, 1986, she was assigned to a post at Broadway and 157th Street. As Officer Williams emerged from the subway station at that location, she observed defendant Ner *1056 eida Colon "lunging” repeatedly at an unidentified man with a knife "trying to stab him”. Defendant was approximately five feet from the man, described as a "male Hispanic, approximately 26-27, black hair, sneakers, jeans”, who was facing her and attempting to back away down the street as she jabbed at him with the four-inch knife. Officer Williams, who was 35 feet away from defendant and the male when she first noticed them together on the sidewalk, immediately approached with her gun drawn and instructed Ms. Colon to "put down the knife”. Defendant did not comply with this directive. Instead, she turned towards the police officer — still holding the knife extended at arm’s length — then proceeded away from the officer for approximately 25 feet and turned the corner. Officer Williams followed and ultimately recovered the knife from the pavement where she saw defendant drop it.
Officer Williams did not claim that defendant had made any motions towards her with the knife. Rather, according to Officer Williams, "[a]fter realizing that she was now talking to a police officer [defendant] still refused to drop the knife. She was facing [the man] and she didn’t know what to do when I informed her to drop the knife she just held it on me now at this point”. The officer acknowledged that she made no effort to question the male individual seen with defendant, who had disappeared down the street while the officer was attempting to retrieve defendant’s weapon.
At the conclusion of the People’s case, defense counsel moved for a trial order of dismissal, contending that the People had failed to establish a prima facie case that defendant possessed the knife unlawfully. The court agreed with counsel that the evidence did not establish a prima facie case insofar as unlawful intent to use the weapon against the police officer was concerned; however, the court concluded that the People had met their burden of going forward with respect to proof showing that defendant possessed a knife with intent to use it unlawfully against the unidentified male.
Nereida Colon then took the stand and testified that she entered a "chicken fast food place” on the evening of December 27, 1986, but decided not to make a purchase after she discovered two people in line ahead of her. According to defendant, as she was on her way out of the store, "a fellow opened the door and as soon as he opened the door I was just ready to go out and he didn’t allow me to go out so I moved back. As I moved back he picked up his hands and moved back about three steps.” Concluding from this equivocal ges *1057 ture — which was unaccompanied by any verbal expression— that this individual "was ready to assault” her, defendant pulled out her knife and held it out at him. The man, who was a stranger to Ms. Colon, immediately ran out of the store and disappeared down the street. Defendant, who was still grasping the knife, stepped out of the store herself, encountering the police officer less than a foot away "right by the door”. Defendant denied that she had chased the stranger out of the store while brandishing a knife; rather, according to Ms. Colon, the knife remained in her hand simply because she had not had time to put it away before she happened upon the police officer. After hearing this evidence, the court convicted defendant of criminal possession of a weapon, fourth degree, and adjourned the case for preparation of a presentence report and for posttrial motions.
II
Not surprisingly, in their respective posttrial motion papers, defense counsel and his adversary assess the significance of the bill of particulars at issue here in diametrically divergent ways. Counsel argues that he made a formal written motion for a bill of particulars, purposefully requesting that the People identify the "exact manner” in which defendant was alleged to have wielded the knife unlawfully "as stated in the complaint.” When the People replied, in response to this specific demand, that "the defendant pointed the knife towards the police officer”, counsel interpreted this assertion as "evinefing] an intention to limit the [People’s] evidence to proof of defendant’s guilt as to the police officer only.” In the absence of any subsequent motion by the Assistant District Attorney for leave to amend the bill of particulars (see, CPL 200.95 [8]), counsel urges that principles of timely notice and fair play require the court to strike testimony concerning defendant’s use of the knife against the unknown male and to dismiss the charge. The People counter that the court should reject this "hypertechnical” argument, since defendant clearly had notice from the face of the information as to the specifics of the criminal conduct she was called upon to defend at trial. The People further protest that they were not "bound” to answer defendant’s question number 6 in any event, because it called for revelation of the "theory” of their case; accordingly, they should not be "penalized” for their concededly incomplete response.
Reassessing its ruling that the complaint itself provided *1058 sufficient notice to satisfy constitutional standards, the court is persuaded that, under the circumstances of this case, the People must be deemed to have limited the theory of this prosecution by responding as they did to defendant’s request for a bill of particulars. Accordingly, in the absence of proof indicating that Ms. Colon intended to use the knife unlawfully against the police officer, defendant’s conviction for criminal possession of a weapon may not stand.
Ill
The purpose of the pleadings in a criminal case is threefold: (1) to inform the defendant of the crimes with which he is being charged with sufficient fullness and clarity to allow him to prepare and conduct a defense; (2) to limit the People, in a felony case, to proving only those charges for which the Grand Jury has indicted the defendant; and (3) to specify the conduct at issue so as to prevent subsequent attempts to retry the defendant for the same crime or crimes, in violation of the constitutional prohibition against double jeopardy. (See, e.g., People v Charles, 61 NY2d 321, 326-327 [1984]; People v Morris, 61 NY2d 290, 293 [1984]; People v Spann, 56 NY2d 469, 472-473 [1982]; People v Iannone, 45 NY2d 589, 594-595 [1978].) The right of an accused to receive adequate and timely notice of the charges on which he is to be tried is guaranteed by both Federal and State Constitutions (see, US Const 6th Amend; NY Const, art I, § 6) and is considered so fundamental a component of justice and fair play that a defendant can challenge its deprivation at any time. (People v Rubin, 101 AD2d 71, 77 [4th Dept 1984].)
The function of the specific document at issue here — i.e., the bill of particulars — is to " 'define more specifically’ ” the conduct forming the basis for the crimes charged in the accusatory instrument (People v Davis, 41 NY2d 678, 679 [1977]), and to clarify and/or amplify matters in the pleadings that are "necessary” to enable the accused to mount a defense. (CPL 200.95 [4], [5].) Although bills of particulars cannot themselves amend an indictment or cure a defective pleading, the courts have emphasized the value of these instruments in supplementing the often meager factual information supplied to defendants under the liberalized pleading rules of modern criminal practice. Indeed, defendants who challenge the sufficiency of indictments on constitutional grounds are routinely admonished that the appropriate vehicle for obtaining the *1059 requested information is by means of a bill of particulars. (See, e.g., People v Jackson, 46 NY2d 721 [1978]; People v Fitzgerald, 45 NY2d 574, 580 [1978]; People v Iannone, 45 NY2d, at 597-598, supra; People v Davis, 127 AD2d 782, 783 [2d Dept 1987].)
Although intended to assist counsel in preparing for trial, bills of particulars do not serve as a substitute for pretrial discovery. (People v Davis, 41 NY2d, at 679, supra.) Not only must the information sought by a request for a bill of particulars be "necessary” for adequate preparation of the defendant’s case (CPL 200.95 [4], [5]) — a stricter standard than obtains for pretrial discovery in general — but the limitations on discovery that exempt the People from revealing their evidence or their theory of the case prior to trial apply with equal force to demands for a bill of particulars. As one commentator has observed, one reason for circumscribing the reach of the bill is the potential adoption in New York of the rule that, in some jurisdictions, binds the prosecution to the evidence set forth in the bill of particulars and requires that guilt be established by proof of the specific facts alleged therein. (Pitler, New York Practice Under the CPL § 6.30, at 322-323 [1972]; see also, 2 LaFave & Israel, Criminal Procedure § 19.2 [f], at 458-459 [1984]; 2 Wharton’s Criminal Procedure § 355, at 281, n 53 [Torcia, 12th ed 1975]; 1 Wright Federal Practice & Procedure, Criminal 2d § 129, at 434-449 [1982]; see also, United States v Payden, 613 F Supp 800 [SD NY 1985]; United States v Raineri, 91 FRD 159 [D Wisc 1980]; United States v Boffa, 513 F Supp 444 [D Del 1980]; United States v Yarus, 198 F Supp 425 [SD NY 1961].)
Indeed, the rule in the Federal courts is that the bill of particulars " 'concludes the rights of all parties who are to be affected by it’ ” (United States v Neff, 212 F2d 297, 309 [3d Cir 1954], quoting Commonwealth v Giles, 67 Mass 466, 469 [1854]); and the government’s case is confined to the particulars it has furnished, unless the variance between the facts specified in the bill and the proof at trial is so unimportant' that no "substantial rights” of the defendant are implicated by it. (Fed Rules Crim Pro, rule 52 [a]; see, United States v Nathan, 816 F2d 230, 235 [6th Cir 1987]; United States v Murray, 297 F2d 812 [2d Cir], cert denied 369 US 828 [1962]; 1 Wright, op. cit., § 129, at 449.) This stricture is intended to promote the constitutional right of a defendant to prepare adequately and meaningfully for trial, by insuring that he is neither misled with respect to the particular acts or events that the government will rely on to establish his criminal *1060 conduct, nor unfairly surprised at the trial by a sudden shift in the government’s theory of the case. (See, United States v Nathan, 816 F2d, at 235, supra; 2 LaFave & Israel, op. cit., § 19.2 [f], at 459.)
Although research has disclosed no explicit adoption of this venerable Federal principle by the courts of New York,* the case law does support defendant’s claim that, in the absence of an authorized amendment to the bill at issue here, the People must be bound by their declaration that defendant’s criminal conduct involved only the alleged pointing of a knife at á police officer. First, as the Court of Appeals has made clear, constitutional principles that apply equally to State and Federal prosecutions mandate that a defendant receive adequate and timely notice of the precise nature of the criminal charges he must be prepared to defend at trial. Where the accusatory instrument raises questions as to what specific conduct forms the basis of the allegations,. the defendant has the right to insist that the necessary information be supplied to him in a bill of particulars. (People v Morris, 61 NY2d, at 294-295, supra; People v Villani, 59 NY2d 781, 783 [1983]; People v Iannone, 45 NY2d, at 597, supra; CPL 200.95 [5].)
Further, in scrutinizing the adequacy of the pleadings to insure that they meet constitutional standards, the Court of Appeals has emphasized that the test for sufficiency "embraces good faith”. (People v Morris, 61 NY2d, at 296, supra.) Thus, the prosecutor may not attempt to gain a tactical advantage by deliberately keeping the defendant in ignorance of matters vital to preparation of a defense, or by postponing diligent investigation of the case until the eve of trial. As the Court of Appeals admonished in People v Iannone (45 NY2d, at 599, supra): "It is beyond cavil that a defendant has a basic and fundamental right to be informed of the charges against him so that he will be able to prepare a defense. Hence the courts must exercise careful surveillance to ensure that a defendant is not deprived of this right by an overzealous prosecutor attempting to protect his case or his witnesses. Any effort to leave a defendant in ignorance of the substance of the accusation until the time of trial must be firmly rebuffed.” (See also, CPL 200.95 [8].)
*1061 Finally, lest a defendant be unfairly surprised, to his detriment, by a last-minute change in the People’s trial strategy, New York courts have insisted that, once the prosecution has expressly limited its theory in a case, the court is obliged to observe that limitation, notwithstanding the existence of evidence that would support conviction under an alternative theory. (See, e.g., People v Barnes, 50 NY2d 375, 379, n 3 [1980] [because the People expressly, although unnecessarily, limited their theory in a burglary case, court must hold them to proof of the narrower theory alone]; People v Rothman, 117 AD2d 535, 536 [1st Dept 1986], affd 69 NY2d 767 [1987] [prosecution’s dismissal of attempted grand larceny counts limited court’s discretion to submit them as lesser included charges]; People v Pope, 53 AD2d 651, supra [2d Dept 1976] [error to refuse charge that possession of weapons count, as limited by People’s bill of particulars, applied only to time of incident]; Matter of Elliton J, 120 Misc 2d 392, 393-394 [Fam Ct, Queens County 1983] [representation in prosecutor’s answering affirmation that assault occurred in course of a felony precluded proof of any other assault].)
Applying these principles to the present case, the court holds that, by responding as they did to defendant’s request for a bill of particulars, the People limited the theory of this prosecution to proof of Ms. Colon’s unlawful use of the knife against the police officer. Plainly, the accusatory instrument here raised questions as to the focus of the People’s case; after the arraigning Judge dismissed both counts of menacing— although only one complainant was actually unavailable to testify at trial — counsel understandably sought clarification as to what precise conduct the People would rely on to establish the possession of a weapon charge. Certainly he was warranted in interpreting the People’s declaration that "[t]he defendant pointed the knife towards the police officer” as an indication that they had opted to abandon all allegations involving the unidentified male and were proceeding solely on the theory that Ms. Colon had wielded the knife unlawfully at the officer. Relying on this assertion, counsel and his client prepared to defend on the basis that defendant lacked any intent to threaten or otherwise injure Officer Williams. Manifestly, the defense was misled in planning its case by the unambiguous terms of the bill of particulars and was unfairly surprised when, during the course of the opening statement, the People reasserted their intention to support the accusation of unlawful possession by proof of defendant’s use of the knife *1062 against the absent individual. (See, People v Covington, 86 AD2d 877 [2d Dept 1982] [defendant relied on date given in bill of particulars to prepare alibi defense; belated amendment without notice ruled prejudicial]; cf., People v Charles, 61 NY2d, at 327, supra [defense counsel concededly aware of prosecution strategy from earlier trials; therefore ability to prepare not hampered by language of bill of particulars]; People v Clayborn, 44 AD2d 620, 621 [3d Dept 1974] [discrepancy between bill of particulars and indictment merely harmless typographical error].)
The People’s argument that defendant’s request need not have been answered completely, since it went "beyond the scope of CPL § 200.95” deserves little comment. Rather than asking "how” the People intended to prove their case, which information is not discoverable under CPL 200.95 (1), defendant’s request was appropriately limited to ascertaining the specific acts encompassed by the charge. Plainly, Ms. Colon was entitled to demand that the People identify the conduct that formed the basis for the allegation that she possessed a weapon "with intent to use [it] unlawfully against another” (People v Villani, 59 NY2d, at 783, supra; People v Fitzgerald, 45 NY2d, at 579-580, supra), and she justifiably expected the People to respond fully and forthrightly to her "Omnibus Motion”. To sanction the People’s concededly deficient reply in this case would not only undermine respect for the sanctity of sworn statements and the purposefulness of prosecutorial actions in general, but would discourage in particular the meaningful dialogue between the parties contemplated by modern discovery rules. As one court has observed: "The purpose of pretrial proceedings is to give the respondent a fair trial and the opportunity to adequately prepare a defense. In that respect, the respondent should be able to feel secure that the statements received from the prosecutor can be relied upon. To hold otherwise would violate all notions of fair play and substantial justice.” (Matter of Elliton J., 120 Misc 2d, at 393-394, supra.)
In sum, the court concludes that defendant’s conviction was erroneously based on evidence that she lunged at an unidentified individual with a four-inch knife, and that such error, being of constitutional dimension, "would require a reversal * * * by an appellate court” if pursued on appeal. (CPL 330.30 [1].) Since this court ruled previously that the People had not adduced any evidence whatever that Ms. Colon intended to use her knife unlawfully against the police officer, the proof at *1063 trial was not "legally sufficient” to establish defendant’s guilt of the offense of which she was convicted. (CPL 470.15 [4] [b].) Accordingly, the guilty verdict must be set aside, and the information dismissed. (See, People v Carter, 63 NY2d 530, 536 [1984]; People v Bjune, NYLJ, Sept. 1, 1987, at 14, col 3 [App Term, 2d Dept]; People v Murphy, 139 Misc 2d 83 [Sup Ct, Kings County].)

 The courts in People v Pope (53 AD2d 651 [2d Dept 1976]), Matter of Elliton J. (120 Misc 2d 392, 393 [dictum]), and People v Smalley (64 Misc 2d 363, 366 [Schuyler County Ct 1970] [dictum]) simply invoke the Federal standard without further discussion.